FAWCETT, APPELLANT, *v.* G. C. MURPHY & CO. ET AL.,
APPELLEES.
BRUEWER, APPELLANT, *v.* GEILER PLUMBING COMPANY ET AL.,
APPELLEES.
WILSON, APPELLANT, *v.* CINCINNATI MILACRON, INC.,
APPELLEE.

[Cite as Fawcett v. G. C. Murphy & Co. (1976),
46 Ohio St. 2d 245.]

(Nos. 75-202, 75-203 and 75-204—Decided May 19, 1976.)

*Messrs. Paxton & Seasongood, Mr. Paul M. Schindler* and *Mr. Bruce M. Allman,* for appellants (cases Nos. 75-202, 75-203 and 75-204).

*Messrs. Benjamin, Faulkner, Dreibelbis & Tepe* and *Mr. Edwin J. Dreibelbis,* for appellees (case No. 75-202).

*Messrs. Gorman, Davis, Hengelbrok & Price, Mr. David N. Gorman* and *Mr. Edwin C. Price, Jr.,* for appellees (case No. 75-203).

*Messrs. Taft, Stettinius & Hollister, Mr. J. Mack Swigert* and *Mr. Roger A. Weber,* for appellee (case No. 75-204).

O'NEILL, C. J. Common issues of law are presented in these three appeals and they are, therefore, consolidated herein for purposes of review.

Th first issue, as stated by appellants, is whether the "statutory policy" set forth in R. C. 4101.17 "must be implemented by Ohio courts in a private civil action for damages."

R. C. 4101.17 reads:

"No employer shall refuse opportunity of interview for employment of applicants or discharge without just cause any employee between the ages of forty and sixty-five who are physically able to perform the duties and otherwise meet the established requirements of the industry and laws pertaining to the relationship between employer and employee."

The foregoing statute does not include within its terms a remedy for its breach. Appellants argue that "in some manner some authority may enforce the provisions of R. C. 4101.17" and that "* * * at least one such authority is the judiciary."

It is evident that a holding that violation of R. C. 4101.17 gives rise to a civil action for damages would require this court by implication to determine that the General Assembly, by the enactment of the statute, intended to create such a cause of action.

R. C. 4101.17 is part of the Chapter of the Revised Code entitled ''Department of Industrial Relations'' and the other provisions of that Chapter of the Code are relevant to the construction of that section.

R. C. 4101.02 empowers the Department of Industrial Relations to '' [a]dminister and enforce * * * laws protecting the * * * welfare of employees in employment and places of employment * * *.'' R. C. 4101.03 confers authority upon the Department of Industrial Relations ''to enforce and administer all laws and all lawful orders requiring such employment and place of employment * * * to be safe and requiring the protection of the life, health, safety, and welfare of every employee * * *.''

R. C. 4101.05 authorizes the Director of Industrial Relations, or deputies, or authorized employees of the department to ''enter any place of employment for the purpose of collecting facts and statistics, examining the provisions made for the health, safety, and welfare of the employees therein, and bring to the attention of every employer any law or any order and any failure on the part of such employer to comply therewith.''

R. C. 4101.15 provides that '' [n]o employer * * * shall * * * fail to perform any duty lawfully enjoined * * * for which violation no penalty has been specifically provided, or fail to obey any lawful order given or made by the department * * *.''

Finally, R. C. 4101.99(A) provides fines for violation of R. C. 4101.15.

A reading of the foregoing statutes reveals that the Department of Industrial Relations is vested with authority to enforce R. C. 4101.17 administratively by virtue of the department's power to issue orders and to prosecute violations of its orders under R. C. 4101.99(A). It is logically inferrable that these administrative enforcement pro-

cedures were intended by the General Assembly to be util-ized for violations of R. C. 4101.17.

In *Johnson* v. *United States Steel Corporation* (1964), 348 Mass. 168; 202 N. E. 2d 816, the Supreme Judicial Court of Massachusetts was confronted with a question similar to the one raised here. The statute at issue in that case read:

"It is hereby declared to be against public policy to dismiss from employment any person between the ages of forty-five and sixty-five, or to refuse to employ him, because of his age."

In determining that the foregoing statute did not provide a civil remedy the court stated, at page 169:

"Nowhere in c. 149 is any express civil remedy provided for the violation of * * * [the statute]. And there is no basis for implying one. * * *

"* * * The defendant's duty not to discharge the plaintiff before he had reached the age of sixty-five is solely the creature of statute; no such duty exists at common law. The only basis for holding the defendant liable is the statute. But that does not expressly provide a civil remedy. Nor does it appear that such a remedy was intended by 'clear implication.' "

Similarly, here, it cannot be concluded that the General Assembly by "clear implication" intended to create a civil action for damages for the breach of R. C. 4101.17. This court, therefore, is disinclined to read such a remedy into that section.

The second common issue presented is appellants' contention that the right of employers "to terminate employment at will for any cause, at any time whatever, is not absolute, but limited by principles which protect persons from gross or reckless disregard of their rights and interests, wilful, wanton or malicious acts or acts done intentionally, with insult, or in bad faith."

The holding in *Anderson* v. *Minter* (1972), 32 Ohio St. 2d 207, 291 N. E. 2d 457, refutes that contention. In that case, plaintiff, contending that her suspension from employment "was in violation of the protection accorded

her by the civil service provisions of the Ohio Revised Code," filed suit against Minter, the Director of the Cuyahoga County Welfare Department, her employer, and against her supervisor, Tuttle. The action against the supervisor was based upon an allegation that he had induced the director to suspend plaintiff. It was alleged that both the director and the supervisor had "acted maliciously." Damages were sought against both Minter and Tuttle.

Discussing the liability of Tuttle and applying the same reasoning to the cause of action seeking monetary damages against Minter, Justice Leach stated, at page 213:

"Tuttle is alleged to have maliciously induced Minter to suspend plaintiff, and upon that basis the Court of Appeals concluded that an 'action in tort' is stated against Tuttle 'for interference with [plaintiff's] employment.' We disagree.

"Tuttle is alleged to have been 'in a supervisory position over the plaintiff at the time of the acts complained of.'

"Causes of action have been recognized against 'outsiders' for malicious interference with employment. *Johnson v. Aetna Life Ins. Co.* (1914), 158 Wis. 56, 147 N. W. 32. Where, however, the act complained of is within the scope of a defendant's duties, a cause of action in tort for monetary damages does not lie. Nor can liability be predicated simply upon the characterization of such conduct as malicious. See *Caverno v. Fellows* (1938), 300 Mass. 331, 15 N. E. 2d 483; *Feely v. McAuliffe* (1948), 335 Ill. App. 99, 80 N. E. 2d 373; *Beane v. Weiman Co.* (1969), 5 N. C. App. 279, 168 S. E. 2d 233; *Ross v. Wright* (1934), 286 Mass. 269, 190 N. E. 514, 98 A. L. R. 468, and cases cited.

"As stated in *Johnson v. Aetna Life Ins. Co., supra,* 'Malice makes a bad case worse, but does not make wrong that which is lawful.' "

In addition to the question of whether violation of R. C. 4101.17 gives rise to a civil action for damages for discharge from employment, appellant, in case No. 75-204, urges that "the right to interview created by R. C. 4101.17 * * * [provides] a basis for a claim by * * * [an] aggrieved

prospective employee for relief." This contention is without merit for the same reasons expressed above considering the issue whether violation of R. C. 4101.17 subjects a violator to a civil action for damages.

Appellant in case No. 75-202 presents two questions relating to her cause of action for slander. The first of these is a contention that: "In defining slander *per se,* actual and legal malice should carefully be, and remain, distinguished to prevent confusion, and undue repetition of the term 'malice' alone after reference to both types of malice in a charge to or other communication with a jury is prejudicial error."

An examination of the trial court's instructions to the jury reveals the following series of instructions pertaining to the issue raised by appellant:

" * * * The plaintiff must prove to you by a preponderance of the evidence that the defendant maliciously charged her in the presence of a third person with being a thief or embezzler.

" * * *

"Malice is an essential ingredient of an action for slander. * * * If you find * * * that the defendant stated words in the presence of a third party charging the plaintiff with being a thief or embezzler, the law infers that this was done with malice. * * *

"In other words, if the only evidence before you was that Mrs. Ankeny was accused before a third person of stealing, you could assume at that point that the accusation was made maliciously. However, before reaching a final conclusion as to whether the accusation was made maliciously, you must consider all the evidence as to the surrounding facts and circumstances. If the plaintiff has failed to establish by a preponderance of the evidence that the defendant maliciously charged her in the presence of a third person with being a thief or embezzler, then you need go no further * * * but you will return verdicts in favor of the defendants. If she has proven by a preponderance of the evidence that the defendants maliciously charged her with being a thief or embezzler, then you will go on * * *."

During its deliberations the jury submitted the following question: ''What constitutes slander as far as we the jury are concerned?'' The trial court responded: ''Slander in this case consists of maliciously speaking words which are not true, in the presence of a third person, the clear import of which is to charge Mrs. Ankeny with stealing, where the use of such words is not privileged.''

Appellant asserts that: (1) the court's instructions confuse ''legal or implied malice * * * with actual malice''; (2) the instructions include a ''disproportionate amount of reference by the * * * court to the word 'malice' * * * unadorned by the adjective 'legal' or 'implied' ''; (3) the question from the jury asking for an additional definition of slander is ''particularly significant * * * in view of the confusion of actual and legal malice and the length and complexity of the charge''; and (4) the ''redefinition of slander *per se* by the court [is] totally devoid of any reference to the distinction between legal and actual malice.''

Appellant asserts further that the '' * * * burden of proving actual malice is not a part of a slander *per se* case, and should not be implied in a communication by the court to the jury'' and that ''[a]mbiguous or misleading charges constitute prejudicial error.''

The difficulty with appellant's argument is that it focuses upon only certain portions of the court's instructions, without giving due consideration to the instructions as a whole. Although the court instructed the jury that a finding of malice was necessary to support a verdict in favor of plaintiff, the jury was further instructed that if defendant charged plaintiff with being a thief or embezzler, ''the law infers * * * malice'' and that ''if the only evidence * * * was that Mrs. Ankeny was accused before a third person of stealing * * * [the jury] could assume * * * that the accussation was made maliciously.'' Considerering the trial court's instructions to the jury in their entirety, this court concludes that they were neither ambiguous nor misleading.

Appellant's final contention is that the trial court erred

in submitting to the jury the question of the existence of a conditional or qualified privilege.

On the issue of privilege, the trial court gave the following instructions to the jury:

"The second defense is that the words spoken were privileged. That simply means that under the circumstances it was right for the defendant or all right for the defendant to say them. A communication is privileged when it is made in good faith on a subject in which the speaker has an interest or duty to another with a corresponding interest or duty even though what is said may be slanderous and untrue.

"For example, you heard evidence here of a conference in the office between Mrs. Ankeny, the plaintiff, and Havens, the manager, and Elnora Schmidt, the personnel director, in which this whole cookie business was discussed and plaintiff was then discharged. Both Havens and Schmidt had duties and interest in the conduct of the company business and in the conduct of employees. So they had a right and a duty to talk about the cookies being in Mrs. Ankeny's locker and as long as they spoke in good faith, even though what they said was not true, it is privileged and cannot form the basis of a charge of slander.

"If the defendant has proven to you by a preponderance of evidence that all the communications made by Havens or other managerial employees of the Murphy Co. about Mrs. Ankeny were made in good faith and were made only to others with a similar business interest or duty, then they would be privileged and you would then return verdicts for the defendants.

"You notice that I said, if these communications were made in good faith. If the slanderous words were motivated by malice, as I have previously defined it, they are not privileged and defendant would be liable, whatever his relationship to the party to whom this slander was communicated.

"To conclude then, if the plaintiff has failed to prove by a preponderance of the evidence that the defendant maliciously charged her before a third person with being a

thief or if the defendant has shown by a preponderance of the evidence that whatever was said was true or was said under privileged circumstances, then you would return a verdict for the defendant on this first cause of action, the claim for slander.

"On the other hand, if the plaintiff has proven by a preponderance of the evidence that the defendant maliciously charged her before a third person with being a thief and the defendant has failed to establish by a preponderance of the evidence the truth of the words or that they were spoken under privileged circumstances, then you would return a verdict for the plaintiff * * *."

The law governing qualified privilege was recently considered by this court in the case of *Hahn* v. *Kotten* (1975), 43 Ohio St. 2d 237, 331 N. E. 2d 713. Paragraph two of the syllabus in that case reads:

"A qualified privilege protecting the making of defamatory statements is exceeded when the statements are made with 'actual malice,' that is, with knowledge that the statements are false or with reckless disregard of whether they were false or not."

In the course of the opinion, Justice Corrigan commented upon qualified privilege as follows, at page 244:

"A qualified privilege is recognized in many cases where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it. * * *

" * * *

" 'A qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest. *The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only.*' "

Examination of the portions of the court's instructions reproduced above discloses that the jury was told that the store manager and personnel director had a right and duty to talk about the cookies being in appellant's locker and that such communications were privileged. The jury was instructed then that if it were proven that communications made by the manager or other managerial employees were made only to others with a similar business interest or duty, such communication would also be privileged. Finally, the jury was instructed that if the slander were motivated by malice the defendant would be liable irrespective of the relationship of the parties to whom the words were communicated.

It is evident that the trial court's instructions to the jury on the issue of privilege constituted a correct statement of the law of qualified privilege.

It is the opinion of this court that, on the record presented, it would have been improper for the trial court to decide, as a matter of law, that there was no qualified privilege or that it had not been exceeded by defendants.

Inasmuch as the contentions of appellants in all three cases have been determined to be without merit, the judgments of the Court of Appeals are affirmed.

*Judgments affirmed.*

HERBERT, CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.