DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
[BAD TEXT]
to leave the School Board and become personnel supervisor at the AMHA. The testimony revealed that Friedman was assured by Levey that the job was non-political. He was also given a copy of the 1977 AMHA Employment Policy Manual which contained a clause providing that an employee could only be discharged for "just cause." (This Manual was amended in 1981.) No fixed durational period of employment was specified at this time. Friedman accepted the job. In August of 1982, Levey resigned under allegations of corruption. Purnell was hired to replace him. Friedman was terminated in November of 1982. His letter of termination stated that his "philosphy was not compatible with that of the executive director." Plaintiff's Exh. # 5; T. 214.
Appellee Bramlett had been employed as a maintenance superintendent at the Cathedral of Tomorrow in Cuyahoga Falls. He was solicited for his job at AMHA by a friend of the then legal counsel for AMHA, Herbert Newman. At a job interview with Levey and Newman, he was assured of the non-political nature of the position of AMHA Operations Administrator. He was also assured of job security and given a copy of the 1977 Employee Policy Manual. T. 807. He was not hired for any fixed or definite period of time. He left his job at the Cathedral to work at AMHA. On April 11, 1983, Janet Purnell terminated him and replaced him with someone who later obtained an architectural license.
At the time he was solicited to work for AMHA, appellee [BAD TEXT] Euclid National Bank. Like Friedman and Bramlett, he was assured of the non-political nature of the position and given a copy of the 1977 Manual. Also as in the case of his co-plaintiffs, no fixed duration of employment was specified. He left his job at Euclid National to become finance administrator at AMHA. He was terminated by Purnell alone with Bramlett, "for the good of the agency." T. 2237-38.
On November 22, 1983, Balbach and Bramlett filed [BAD TEXT] complaint against appellants. On November 30th, Friedman filed a separate action. The complaints contained counts for breach of implied contract, wrongful discharge, and libel and slander. The actions were subsequently consolidated and an amended complaint was filed including an additional count alleging violations of appellees' constitutional rights in contravention of Section 1983, Title 42 U.S. Code.
Attached to the appellees' complaint was a document entitled "AMHA Personnel Policy Manual." This manual was adopted by the AMHA Board of Trustees in 1981. It was an amended version of the 1977 manual which was in effect when appellees were hired. Appellees maintained that this document was part of a contract of employment which existed between themselves and appellant, AMHA. Pages fifteen and sixteen of the 1981 manual provide for a graduated disciplinary procedure to be followed prior to an employee's termination. Purnell did not observe this disciplinary procedure before terminating appellees, and they claimed that this constituted a breach of the purported contract.
Shortly before the trial, the judge held a motion hearing. At the commencement of this motion hearing, he made the following pronouncement:
"* * *.
"Subsequent to pretrial procedures, including a review of the admissions contained in the pleadings and briefs of Counsel, all Counsel requested that the Court advise them prior to trial as to whether the AMHA, by its executive director, had the unlimited authority to terminate the Plaintiffs' employment at will and without any proof of fault by an employee.
"Based upon a review of the current law, the Court makes the following finding.
"The Personnel Policy Manual, which was duly adopted by the Board of Directors, clearly recognizes and supports the inclusion (sic) that the Plaintiffs possess property rights in continued employment with the AMHA irrespective of any finding based upon current public policy.
"The Court finds that the Plaintiffs do possess such constitutionally protected property rights and they may not be deprived of such rights except pursuant to constitutionally adequate due process procedures.
"These require due notice of alleged wrongful acts, an opportunity to respond, and before discharge, a hearing and determination that the charges are true and support the proposed discharge.
"This is my ruling. This is and will be my ruling with respect to the matters requested by all Counsel for all the parties in this case, and this ruling is now being placed upon the record herein."
"* * *." Transcript of Motion Hearing at 2-3.
The case proceeded to trial. Near the conclusion of appellees' case, the libel and slander count was settled with appellants' insurer and voluntarily dismissed. At the close of all the evidence, appellees voluntarily dismissed their wrongful discharge claims. The trial court the entertained cross motions for directed verdicts. It granted the motion of appellees stating:
"* * *.
"First the motion of the Defendant for a directed verdict with respect to the claims to the — with respect to the claim of the Plaintiff, based upon some contract premise, is overruled.
"The Court finds that the Personnel Policy Manual which was duly adopted by the Board of Trustees or its directors of the AMHA and, obviously, was intended by the parties that would be the parties effective — it was intended by the employer that the Akron Metropolitan Housing Authority and the employees, that would be all employees, that this should form the basis of the relationship between the Akron Metropolitan Housing Authority and all employees; and that this clearly recognizes and supports the conclusion that the Plaintiffs herein, as do all other employees of the Akron Metropolitan Housing Authority, possess constituted (sic) protected property rights in continued employment, and they may not be deprived of such rights, except pursuant to constitutional adequate due process procedures.
"Now, the — really, the contention of the Defendants in this case is that this actual manual applies, apparently, to everybody else except the three plaintiffs in this case. They haven't said as much, but what it amounts to is that. In other words, practically every other employee there has the rights as provided for in the manual to not be discharged except to be by following the procedure set forth in the manual, and, really, based upon some failure to comply with some of the duties that they were to perform in connection with this case.
"I perceive, really, what the contention of the Defendants are that this really is a contract, the manual is a contract as it applies to all the other employees; but I think classified and enclassified, so that each of them would have the right to the enforcement of the provisions of this manual in law, provided they are not given them by the Akron Metropolitan Housing Authority directly. The manual itself specifies it applies to all employees, so that I find the matter of law that this manual really constitutes a contract as far as the employee — as far as the Plaintiffs are concerned in this particular case; that I see no place at all in the document that really speaks for itself that excludes them, and I am satisfied that they are included under the manual. So that, therefore, the — we find that the manual does constitute a contract and that the three Plaintiffs in this case actually are covered by and, therefore, part of that particular contract.
"So that the motion for the — by the Plaintiffs are made here and now will be sustained, and the jury will be so advised."
"* * *." T. 2447-2450.
Only the issue of damages was submitted to the jury. The jury returned verdicts in favor of all the appellees. It awarded all the appellees together a total of $597,500 in compensatory damages against appellants collectively; $150,000 in punitive damages against Purnell individually; and $60,000 in punitive damages against Fela individually.
Augmented by the trial court's post-trial award of prejudgment interest and attorney fees, the total damages came to $1,000,126.49. We reverse.
Assignments of error one and two both pertain to the trial court's disposition of the cross motions for directed verdicts and will therefore be addressed together.
 ASSIGNMENTS OF ERROR
"I. The trial court erred in failing to grant defendants' motions for a directed verdict."
"II. The trial court erred in directing a verdict for plaintiffs on all issues of liability."
Ohio law follows the general rule that an employee who is hired for an indefinite term may be discharged at any time, with or without cause.Phung v. Waste Management, Inc. (1986), 23 Ohio St. 3d 100; Henkel v.Educational Research Council (1976), 46 Ohio St. 2d 249; Fawcett v. G.C.Murphy Co. (1976), 46 Ohio St. 2d 245; Peterson v. Scott Constr. Co.
(1982), 5 Ohio App. 3d 203, and federal cases applying Ohio law —Hoopes v. Equifax, Inc. (C.A. 6, 1979), 611 F. 2d 134; Starr v. Rupp
(C.A. 6, 1970), 421 F. 2d 999. However, this general rule has been seriously eroded by a host of recent decisions. These decisions allow for recovery under the alternative theories of implied contract, the violation of public policy and the doctrine of promissory estoppel. Mers
v. Dispatch Printing Co. (1985), 19 Ohio St. 3d 100; Hedrick v. Centerfor Comprehensive Alcoholism Treatment (1982), 7 Ohio App. 3d 211; Day
v. Good Samaritan Hospital (Aug. 17, 1983), Montgomery App. No. 8062, unreported; Helle v. Landmark, Inc. (1984), 15 Ohio App. 3d 1; Jones
v. East Center for Community Mental Health, Inc. (1984),19 Ohio App. 3d 19. (This is a non-exhaustive list of cases.)
At least fifteen states have found that an employee handbook or a personnel policy manual, containing a promise to terminate only for just cause or in accordance with certain procedures, may constitute an enforceable promise of continued employment by the employer. 1985Employment-At-Will Reporter, 2001. These courts emphasize that such manuals constitute written obligations voluntarily undertaken by the employer when it decided to promulgate formal policies limiting its right to terminate at will. Weiner v. McGraw-Hill Inc. (N.Y.App. 1982),457 N.Y.S. 2d 193; Pine River State Bank v. Mettille (Minn.App. 1983),333 N.W. 2d 622. The Ohio Supreme Court in Mers, supra, joined this emerging trend in the law when it stated:
"* * * Employee handbooks, company policy, and oral representations have been recognized in some situations as comprising components or evidence of the employment contract. (cites omitted)
"* * * A priori, the facts and circumstances surrounding an oral employment-at-will agreement, including the character of the employment, custom, the course of dealing between the parties, company policy, and any other fact which may illuminate the question, can be considered bythe trier of fact in order to determine the agreement's explicit andimplicit terms concerning discharge. * * *" Id. at 104; see also fn. 3. (Emphasis added.)
Clearly, Ohio has recognized the significance that an employee manual may hold in the evidentiary equation necessary to establish an implied contract. However, such manuals or handbooks standing alone, absent evidence of consideration or detrimental reliance or forbearance, would seldom be sufficient to overcome the employment-at-will doctrine. Even assuming that this were not the case, the determination of the existence of the implied contract evinced by the handbook is one that is within the exclusive province of the jury. The trier of fact must necessarily determine "the agreement's explicit and implicit terms concerning discharge." Mers, supra.
[MISSING TEXT]
granted a directed verdict to appellees solely on the basis of the 1981 manual alone. This was error.
We recognize that this case involved novel issues on the cutting-edge of the law and that they might have seemed highly complex to the average juror. However, the trial court must make every effort not to invade the province of the jury. The determination as to whether the parties had entered into an employment contract involved many facts, the judging of the credibility of the witnesses, and the weighing of evidence constituting the component parts making up the agreement. These are the traditional functions of the trier of fact. Accordingly, we find assignment of error two well taken.
The trial court also ruled that appellees had been deprived of procedural due process. This ruling was contingent on the court's prior ruling finding that appellees had contractual rights under the prevailing state law. Appellees, the court found, had a property interest in their jobs (contractual rights) which could not be deprived without the observation of due process protections. Board of Regents v. Roth (1972),408 U.S. 564; Perry v. Sindermann (1972), 408 U.S. 593. Because we have found error in the trial court's ruling on the implied contract, the court's ruling with respect to due process violations must also fall.
Appellants' motion for directed verdict was primarily based on the employment-at-will doctrine. We have already discussed the substantial in-roads that have been made upon the doctrine. The existence of these newly carved exceptions provided the trial court with sufficient reason for denying this branch of appellants' motion for directed verdict. However, appellants moved in the alternative. They requested the court to dismiss the individual defendants, Purnell and Fela, on the basis of the good faith qualified immunity defense. T. 2471. We find that this portion of appellants' motion should have been granted.
In Harlow v. Fitzgerald (1982), 457 U.S. 800, at 818-19, the Supreme Court held that:
"* * * government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. * * *.
"Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to `know' that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed. If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors."
Though the qualified immunity defense is best raised by way of a motion to dismiss or motion for summary judgment, we see no reason why it cannot be raised by way of Civ. R. 50(A)(1). The only issue presented by the defense is whether the public official violated the "clearly established" legal rights of the plaintiff. We find that the rights of appellees asserted in the instant case were far from clearly established, but were in fact inchoative, and remain so even today. Appellants Purnell and Fela could not have been expected to know that their actions violated legal rights just emerging and not previously recognized by many of the state's courts.
The law of employment relationships is in a state of flux. The newly carved exceptions to the at-will doctrine are still a matter of heated debate among legal scholars and the courts of this state. The Supreme Court of Ohio only recently placed its imprimatur on the use of employment manuals in proving an implied employment contract. Mers,supra. In sum, appellants Purnell and Fela were not charged with making sense out of a legal imbroglio before performing any of their official functions. Accordingly, assignment of error one is well taken in part. Purnell and Fela are shielded by the doctrine of qualified immunity and are dismissed from this action. App. R. 12(B).
Since we must reverse the trial court's directed verdict on liability and order a new trial, the majority of the remaining assignments of error have been rendered moot. While mindful of the literal language of App. R. 12(A), we are wary of rendering advisory opinions on possible controversies which may never ripen. However, we will address those assignments of error dealing with issues which must necessarily be confronted in the re-trial of this case, or which do not involve the discretion of the trial court.
 ASSIGNMENT OF ERROR V
"The trial court erred in refusing to submit defendants' interrogatories to the jury when the interrogatories were duly submitted pursuant to Rule 49(B), Ohio Rules of Civil Procedure."
Civ. R. 49(B) places a mandatory duty on the trial court to submit the interrogatories given to the court in accordance with the rule to the jury. The court does have the discretion to review the content of the interrogatories and to revise them, but they must be submitted. Ragone
v. Vitali Beltrami, Jr., Inc. (1975), 42 Ohio St. 2d 161. Appellants' interrogatories were designed to test the jury's thinking on the issue of damages and determine the amount awarded under each theory of recovery — contract and constitutional violations. They had the right to have such interrogatories submitted and the trial court erred in refusing to do so. Accordingly, assignment of error five is well taken.
 ASSIGNMENT OF ERROR IX
"The trial court erred in awarding prejudgment interest to plaintiffs under R.C. 1343.03(C)."
The only remaining defendant in this case is the AMHA. The AMHA is a creature of the State of Ohio created pursuant to R.C. 3735.27 et seq.
Therefore, it cannot be held liable for prejudgment interest. See Lewis
v. Benson (1979), 60 Ohio St. 2d 66. Accordingly, the assignment of error is sustained.
 ASSIGNMENT OF ERROR X
"The trial court erred in consolidating the trials and not permitting separate trials for each of the plaintiffs."
The claims of Balbach, Bramlett and Friedman were identical. They all presented common questions of law and fact that arose out of the identical series of occurrences. The consolidation of the separate causes of action in a single trial promoted the economy of both the parties' and the court's resources. This was done without any conceivable prejudice to the defendants and in complete accord with common practice. See Staff Note To Civ. R. 42(A). Accordingly, assignment of error ten is not well taken.
 ASSIGNMENT OF ERROR XII
"The trial court erred in holding the AMHA liable under a theory of implied contract."
Appellants maintain, and rightly so, that a municipality may not be held liable under a theory of restitution or quantum meruit. Village ofEastlake v. Davis (1952), 94 Ohio App. 71. However, the line of cases relied upon by appellants do not apply to cases where there exists evidence upon which a court or jury could find a contract. See En. 2,Cosmicoat, Inc. v. Galizio and the City of Akron (Mar. 19, 1986), Wayne App. No. 2109, unreported, at 3. Moreover, the instant case concerns the violation of appellees' constitutional rights. Thus, appellants cited case law is inapposite. Accordingly, assignment of error twelve is overruled.
The judgment of the trial court awarding damages, attorneys fees and prejudgment interest, is vacated and the matter is remanded for further proceedings consistent with this opinion and law.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E).
Costs taxed to appellees.
Exceptions.
Dahling, J. concurs.