**Webb**
**v.**
**Ohio Cas. Ins. Co.**
*[Cite as 2 AOA 691]*

*Case No. CA89-07-109*
*Butler County, (12th)*
*Decided April 16, 1990*

*R.C. 4101.17*

*Graydon, Head & Ritchey, Barbara Scott Bison and Debra A. Fraysure, 1900 Fifth Third Center, P. O. Box 6464, Cincinnati, Ohio 45201, for plaintiffs-appellants.*

*Taft, Stettinius & Hollister, J. Alan Lipps and Mark J. Stepaniak, 1800 Star Bank Center, Cincinnati, Ohio 45202, for defendant-appellee.*

YOUNG, J.

Plaintiff-appellant, Audrey Webb, appeals from a decision by the Butler County Court of Common Pleas which disposed of her action against her employer, defendant-appellee, the Ohio Casualty Insurance Company (hereinafter "Ohio Casualty"), by partial summary judgment and by dismissal after trial to the court of the remaining claim. The trial court entered its final appealable order on July 6, 1989.

The facts indicate that Webb was employed by Ohio Casualty in 1967 and served as a clerk whose job involved reconciling sums the company's agents said they owed the company with sums the company considered to be the amount owed. In 1981, Ohio Casualty began using a computer system in its operation, allowing it to relocate some of its branch office work to its home office. This change resulted in an increased workload for Webb and many of her coworkers.

It became apparent that Webb was experiencing difficulty keeping up with her work. While previous evaluations had shown Webb's performance to have been satisfactory, she now began to receive criticism from her supervisor that she was not working quickly enough. Some of her workload was transferred to other clerks, yet complaints about her performance continued. In 1986, when Webb was sixty years of age, the company placed her on six months probation and told her to improve her performance or face termination. However, Ohio Casualty also gave her the option of transferring to another position within the company. Two weeks after being placed on probation, Webb tendered her resignation, accepting early retirement. Ohio Casualty representatives encouraged her to stay and informed her that she could "unretire" in the following three months if she chose. Webb did not return to the company.

Webb then filed suit along with her husband Russell Webb against Ohio Casualty, alleging intentional infliction of emotional distress, breach of contract, negligent failure to train or oversee supervisory personnel, and age discrimination and loss of consortium. Ultimately, the claims of Russell Webb were voluntarily dismissed on May 26, 1988. The trial court subsequently granted Ohio Casualty's motion for summary judgment on all but the age discrimination claim, which it later dismissed on Ohio Casualty's motion at the close of Webb's case.

On appeal, Webb assigns the following as error:

ASSIGNMENT OF ERROR NO. 1:

"The Trial Court Erred To The Prejudice Of Plaintiff/Appellant In Granting Defendant/Appellee's Motion For Summary Judgment On Plaintiff's Claim For Intentional Infliction Of Mental Distress (Count I) And Entering Final Judgment In Accordance Therewith."

ASSIGNMENT OF ERROR NO. 2:

"The Trial Court Erred To The Prejudice Of Plaintiff/Appellant In Denying Plaintiff's Request For A Jury Trial On The Issue Of Age Discrimination Under Ohio Revised Code §4101.17."

ASSIGNMENT OF ERROR NO. 3:

"The Trial Court Erred To The Prejudice Of Plaintiff/Appellant In Directing A Verdict For The Defendant/Appellee On The Age Discrimination Claim Under Ohio Revised Code §4101.17."

ASSIGNMENT OF ERROR NO. 4:

"The Trial Court Erred To The Prejudice Of Plaintiff/Appellant In Granting Defendant/Appellee's Motion For Summary Judgment In Accordance Therewith On Counts II and III Of Plaintiff's Complaint."

For her first assignment of error, Webb asserts that the trial court erroneously rendered summary judgment for Ohio Casualty on her claim against the company for intentional infliction of emotional distress. She argues that reasonable minds could differ as to whether Ohio Casualty's conduct was extreme and outrageous, thus precluding summary disposition of her claim.

In assessing the propriety of the trial court's decision to grant summary judgment, our inquiry focuses upon whether that court correctly determined that, construing the facts in a light most favorable to Webb, reasonable minds could only conclude that Ohio Casualty should prevail. *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327. Webb contends that it was a genuine issue of material fact as to whether the conduct of Ohio Casualty was so outrageous as to constitute intentional infliction of emotional distress. We disagree.

Ohio first recognized a cause of action for intentional infliction of emotional distress in *Yeager* v. *Local Union 20* (1983), 6 Ohio St. 3d 369. That case followed the Restatement of the Law 2d, Torts (1965) 71, Section 46(1), in holding that "'[o]ne who by extreme and outrageous conduct intentionally or recklessly

causes severe emotional distress to another is subject to liability for such distress.'" *Yeager, supra*, at 374. "Extreme and outrageous" conduct is defined as conduct which goes "beyond all possible bounds of decency" and which is "regarded as atrocious and utterly intolerable in a civilized community." *Id.* at 375.

A discharged employee was found to have met this standard in *Foster* v. *McDevitt* (1986), 31 Ohio App. 3d 237, 240, in which the court found that an employer had intentionally inflicted emotional distress on an employee. In *Foster*, the employer continually berated the employee, whom she knew to have a heart condition, calling him a thief and a liar and describing him as fat, lazy, and no good. *Id.* at 238. She forced him to do heavy labor, threatening to fire anyone who attempted to help him. *Id.* When this activity sent him to the hospital with unstable angina pectoris, she told him that if he wasn't back to work in two days, she would fire him, which she did. *Id.*

We believe that the trial court in the case at bar reasonably found that the conduct of Webb's employer did not reach the type of extreme conduct outlined under the facts in *Foster*. While it was uncontroverted at trial that Webb's supervisor met with her frequently and criticized her job performance, no evidence was presented to show that this criticism went beyond the "bounds of decency." *Yeager, supra*, at 375.

This being the case, we find that Ohio Casualty's conduct more closely resembles the legitimate criticism of employee performance outlined in *Brannon* v. *Brown County General Hosp.* (Mar. 31, 1988), Brown App. No. CA87-11-016, unreported. In that case, this court found that "even if a contractual right to be free from verbal and emotional abuse existed during employment, it would have to recognize an employer's legitimate right to criticize and correct its employee's work as well as the power to demote or discharge its employees."

Ohio Casualty's criticism of Webb's performance may well have been harsh or unfair; nevertheless, the company's right to criticize Webb's performance and to insist upon improvement must be recognized. Only where an employer's treatment of employees can be characterized as outrageous may an action for intentional infliction of emotional distress lie. The trial court could reasonably have found under these facts that Ohio Casualty's conduct could not even remotely have been characterized as outrageous and thus Webb's claim was not

immune from summary judgment. Webb's first assignment of error is overruled.

Webb's second assignment alleges that the trial court erred in denying her request for a jury trial on her age discrimination claim. The Ohio Supreme Court has held that a constitutional right to jury is only present where the right existed at common law at the time of the adoption of the Ohio Constitution. *Kneisley* v. *Lattimer-Stephens Co.* (1988), 40 Ohio St. 3d 354, 356. Since age discrimination claims did not exist at common law, Webb may only assert a right to jury trial under a statutory provision. See *Fawcett* v. *G. C. Murphy & Co.* (1976), 46 Ohio St. 2d 245, 249. R.C. 2311.04 provides a right to jury trial in actions commenced at law – that is, for money only. Webb asserts that her claim is just such an action.

In *Brunecz* v. *Houdaille Indus., Inc.* (1983), 13 Ohio App. 3d 106, 107, the court found that worker's compensation discrimination claims commenced under R.C. 4123.90 are essentially equitable claims for reinstatement, with any monetary award being incidental to that action. The age discrimination provision under R.C. 4101.17 similarly provides an equitable remedy when it states "if the court finds that an employer has discriminated on the basis of age, the court shall order an appropriate remedy." No right to jury trial is mentioned. We thus find that because an action for age discrimination is equitable in nature, providing reinstatement with any monetary award being ancillary to that equitable remedy, Webb possessed no right to a jury trial on the issue of age discrimination. Webb's second assignment of error is overruled.

For her third assignment of error, Webb argues that the trial court erroneously granted Ohio Casualty's motion for directed verdict on her age discrimination claim. Since the action was not tried before a jury, however, we understand the trial court to have instead granted Ohio Casualty's motion for dismissal under Civ. R. 41(B) (2).

The court was required to have determined upon this motion whether Webb "made out [her] case by a preponderance of the evidence." *Fireman's Fund Ins. Co.* v. *Mitchell-Peterson, Inc.* (June 19, 1989), Butler App. No. CA88-07-100, unreported. We may not set aside the trial court's conclusions "unless they are erroneous as a matter of law or against the manifest weight of the evidence." *Id.*; *Altimari* v. *Campbell* (1978), 56 Ohio App. 2d 253, 256.

The trial court based its dismissal on its understanding that Webb had not met her

burden of establishing all elements of a prima facie case for age discrimination. To make out a prima facie case of age discrimination, a plaintiff must prove the following: (1) that plaintiff is a member of the statutorily protected class; (2) that plaintiff was discharged; (3) that plaintiff was qualified for the position; and (4) that plaintiff was replaced by a younger person. *Barker* v. *Scovill, Inc.* (1983), 6 Ohio St. 3d 146, 148. Specifically, the trial court found Webb had failed to show that she was discharged from her job.

Webb argues that she met that burden by establishing constructive discharge. In other words, Webb asserts that working conditions were so difficult that she was compelled to resign, thus meeting the requirement that she not have left her employment voluntarily.

The evidence before the trial court indicated that Webb was given the option of transferring to a new position and was encouraged to change her mind after she decided to retire. The trial court reasonably determined that Webb chose to retire, and that this decision was not coerced by the company. Where an employee is given several options in this manner, it cannot be said that discharge has occurred. See *Barker, supra.*

Because Webb failed to make a prima facie showing of age discrimination, the trial court properly granted Ohio Casualty's motion to dismiss at the close of her evidence. Webb's third assignment of error is overruled.

Webb's fourth assignment of error contends that the trial court erroneously rendered summary judgment on her claims for breach of contract and for negligent failure to train or oversee its supervisory employees. Webb argues that Ohio Casualty did not fulfill its obligation to use good faith in following its grievance procedure and that the company's negligent failure to oversee Webb's supervisor resulted in her harm. We will consider these arguments serially.

Despite the rule in Ohio that employment contracts may be terminated at the will of either party, the trial court was entitled to consider the facts and circumstances surrounding the employment-at-will agreement "in order to determine the agreement's explicit and implicit terms concerning discharge." *Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, 104. In the case at bar, Ohio Casualty had provided a grievance procedure which would permit disgruntled employees the opportunity to seek redress for their grievances.

Webb argues that the doctrine of promissory estoppel operates to show that Ohio Casualty breached a contractual obligation to use good faith in dealing with employee grievances. We find this reasoning to be somewhat flawed. Webb cannot bring an action for breach of a duty to use good faith in employment practices. See *Fawcett, supra*, at 250. Consequently, she asserts that Ohio Casualty led her to rely on its grievance procedures to her detriment and so breached a contractual obligation to follow its own procedures.

Promissory estoppel applies where "a promise which the employer should reasonably expect to induce action or forbearance by the employee does induce such action or forbearance." *Mers, supra*, at 105. However, where reasonable reliance is found, the result is that the employer is estopped from asserting a legal right. *Id.* Webb fails to indicate just what Ohio Casualty should have been estopped from asserting. The trial court found that Webb had failed to sufficiently allege that the company had not followed its own grievance procedures or that such procedures were somehow faulty. Moreover, the court found that Webb had failed to prove the grievance procedures had any connection to her departure from the company. Logically, if promissory estoppel principles applied, it would seem that Ohio Casualty would have been estopped from asserting its right to discharge Webb. However, as stated above, Webb was not discharged. The trial court properly held that this claim was meritless.

Webb also alleges that Ohio Casualty negligently failed to train and oversee her supervisor, which resulted in harm to Webb. In support of this motion, Webb directs our attention to several cases holding that an employer may be liable for the acts of an employee whom the employer has negligently failed to properly supervise or train. The elements of such a claim are outlined in *Strock* v. *Pressnell* (1988), 38 Ohio St. 3d 207, 217:

"It is axiomatic that for the doctrine of *respondeat superior* to apply, an employee must be liable for a tort committed in the scope of his employment. Likewise, an underlying requirement in actions for negligent supervision and negligent training is that the employee is individually liable for a tort or guilty of a claimed wrong against a *third person*, who then seeks recovery against the employer." (Emphasis added.)

We understand *Strock* and similar cases to address the employer's potential liability to third persons. Under the facts before us, it would seem that the provisions of the Ohio Worker's Compensation Chapter would apply as the exclusive remedy of an employee harmed by the act of a fellow employee which act can be traced to negligence on the part of the employer. *Jones* v. *VIP Development Co.* (1984), 15 Ohio St. 3d 90, 94; *Blankenship* v. *Cincinnati Milacron Chemicals* (1982), 69 Ohio St. 2d 608. The trial court thus correctly granted summary judgment on this claim.

Because we find no error in the trial court decision on both the breach of contract and the negligent failure to supervise claims, we overrule Webb's fourth assignment of error.

*Judgment affirmed.*

HENDRICKSON, J., Concurs.
KOEHLER, J., Dissents.

KOEHLER, J., Dissenting:
Appellant presented to the trial court sufficient genuine issues of fact to preclude dismissal of count one of the complaint by summary judgment.

I am further of the belief that appellant was entitled to a jury trial of the factual issues raised on her age discrimination claims.

The record supports appellant's basis for claiming a constructive discharge occurred and clearly establishes the trial court's reliance on matters dehors the record in reaching its determination to grant a "directed verdict."

Accordingly, I dissent.