JOURNAL ENTRY and OPINION
In this action for wrongful discharge, plaintiff-appellant Michael Devlin appeals from the trial court order which granted defendant-appellee North Shore Door Company's motion for summary judgment. The facts relevant to this court's disposition of the appeal follow.
In 1990, appellant was hired as a service technician by appellee, a small company in the business of sales, service and installation of overhead doors and automated entry systems. At the commencement of his employment, appellant signed for and received an employee handbook which stated in pertinent part the following:
A WORD ABOUT THIS HANDBOOK
 * * * The company retains the right to make decisions involving employment asneeded in order to conduct its work in a manner that is beneficial to the employees and North Shore Door Company.
 * * *
The policies contained in this employee handbook are not intended as a contract of employment and may be added to or changed as needed by our company. Our company adheres to the policy of employment-at-will, whichenables either the employee or the employer to terminate the employmentrelationship at any time.
 * * * A WORD ABOUT OUR EMPLOYEE RELATIONS PHILOSOPHY
We are committed to providing the best possible climate for maximum development and achievement of goals for all employees. Our practice has always been to treat each employee as an individual. We have alwayssought to develop a spirit of teamwork; individuals working together to attain a common goal.
In order to maintain an atmosphere where these goals can be accomplished, we have provided a workplace which is comfortable and progressive. Most importantly, We have a workplace where communicationsare open and problems can be discussed and resolved in a mutuallyrespectful atmosphere taking into account individual circumstances and the individual employee.
We believe the main reasons we have been able to adhere to our policy of individual and team recognition is that we have been able to speakdirectly to each other without the interference of an outside thirdparty, which would have no real stake in the future of our company and our employees.
We firmly believe that by our communicating with each other directly,we can continue to resolve any difficulties that may arise and develop amutually beneficial relationship.
 NON-HARASSMENT POLICY
It is our policy to prohibit harassment of one employee by another employee or supervisor on any basis * * * *
The purpose of this policy is * * * to assure that, in the workplace, no employee harasses another * * * *
While it is not easy to define precisely what any of these bases are, they certainly include * * * derogatory comments, * * * *
* * * Violations of this policy will not be permitted and may resultin discipline up to and including discharge.
 * * * TALK TO US
We encourage you to bring your questions, suggestions and complaints to our attention. Careful consideration will be given to each of these in our continuing effort to improve operations.
If you feel you have a problem, you should present the situation to theservice manager so that the problem can be settled by examination and discussion of the facts. We hope that (s)he will be able to satisfactorily resolve most matters. If you find that you still havequestions after meeting with the service manager or that you would like further clarification on the matter, you may request a meeting with thepresident. She will review the issues and meet with you to discuss possible solutions.
Your suggestions and comments on any subject are important to us so we encourage you to take every opportunity to discuss them with us. Your jobwill not be adversely affected in any way because you choose to use thisprocedure.
 * * * ATTENDANCE AND PUNCTUALITY
Attendance and punctuality are important factors for your success with our company. We work as a team and this requires that each person be inthe right place at the right time.
 * * * STANDARDS OF CONDUCT
Each employee has an obligation to observe and follow the company's policies and to maintain proper standards of conduct at all times. If anindividual's behavior interferes with the orderly and efficient operationof a department, corrective disciplinary measures will be taken.
Disciplinary action may include * * * discharge. The appropriate disciplinary action imposed will be determined by the company. * * *
The following misconduct may result in discipline up to and including discharge: flagrant misconduct, violation of the company's policies or safety rules, insubordination, poor attendance, * * * or disrespecttoward fellow employees, visitors or other members of the public. These examples are not all inclusive. We emphasize that discharge decisionswill be based on an assessment of all relevant factors.
 * * * OUTSIDE EMPLOYMENT
Our company hopes that you will not find it necessary to seek additional outside employment. However, if you are planning to accept an outside position, you must notify the president.
Outside employment must not conflict in any way with yourresponsibilities with our company. * * *
(Emphasis added.)
The record reflects that sometime in 1992 or 1993, appellant attempted to start his own tree-trimming business; however, he injured himself and was unable to do his work for appellee for ten days. Moreover, over the period of appellant's employment, Mark O'Donnell, appellee's general manager and appellant's supervisor, noted that appellant had an "attitude" and his rate of absenteeism and tardiness exceeded that of his fellow employees. O'Donnell thought of appellant as less than dependable.
In late May, 1993, appellee's president, Bonnie O'Donnell, noticed a letter on her office desk which stated as follows:[1]
We the employee of north shore door are at a point that coming to work is a pain instead of a pleasure. Most of the service men feel that we're treated like trash. When your needed great but when we're not needed you don't care and if you do it doesn't show. You have lost touch with your workers needs. We feel theirs not one benefit aimed toward the service men. Without us doing a professional job in the field you have no company. Not saying your not doing a great job. We just think the fruit of a successful company should be shared by everyone.
If you don't stop whats slipping away you could lose work and more people. Good workers are hard to find as you already have found out.
Signed all Feedup
The O'Donnells apparently were upset by the receipt of this letter. Thus, they composed an "answer" to it which was distributed to their employees and then began interviewing their employees to obtain some information about what may have prompted the letter and who may have authored it. When specifically asked if he endorsed any of the comments made in the letter, every employee stated "no."
During the interview process, the O'Donnells learned that another technician saw appellant writing the letter. Also during this time period, at the company office the O'Donnells overheard appellant talking to some of his coworkers; at that time, appellant was making inappropriate comments about other employees and saying insulting words about his employers.
On June 4, 1993, appellant was called into Mr. O'Donnell's office where he was informed his employment was terminated. Although the "exit interview" was apparently abbreviated, O'Donnell handed appellant a letter typed on company stationery which stated:[2]
It is with deep regret that I am informing you that you are being discharged, terminated for cause.
The specific cause is; you violated the Non Harassment Policy as defined in Section #1, Page #4 of the employee handbook which you signed for on 2/26/91.
Your authorship of the "Feedup" letter of 5/25/93 is viewed by the management as harassment.
Additionally, we view the letter as an attempt to threaten us.
An exhaustive interview process has taken place, where by yourformer fellow workers categorically stated that your letter doesnot reflect their views.
Had your letter been from you alone and not represented as a letter expressing we the employees, we would have accepted it as a free expression of your feelings.
Therefore, we can only conclude that your intentions were to harass themanagement of this company.
(Emphasis added.)
On July 8, 1993, appellant filed a complaint against appellee in the Cuyahoga County Court of Common Pleas. Therein, appellant alleged in pertinent part the following:
3. * * * Defendant terminated plaintiff because defendant mistakenly believed that plaintiff had authored a letter to defendant's employees critical of defendant's operations. Defendant's purpose in terminating plaintiff was to chill plaintiff's and defendant's other employees' right to act in concert with one another with regard to the conditions of employment with defendant. The right of employees to so act in concert vis a vis their employers is a matter of statute.
4. In so discharging plaintiff on June 4, 1993 defendant acted in violation of the public policy of the State of Ohio and in derogation of plaintiff's rights as established by statute.
Appellee filed an answer denying the allegations of the complaint. The parties thereafter commenced discovery in the action.
On July 18, 1994, appellee filed a motion for summary judgment. In its brief in support of the motion, appellee argued since appellant was an at-will employee of appellee, appellee was within its rights to discharge him. Appellee also noted that appellant had failed to specify what state statute it had violated in discharging appellant.
Appellee supported its motion with the following: 1) a portion of appellant's deposition testimony, wherein appellant acknowledged he had received the employee handbook, had no employment contract with appellee, did not attempt to unionize the other employees, and had attempted to start his own business while he was working for appellee; 2) a copy of the employee handbook, and 3) a copy of the letter signed "All Feedup."
Appellant filed a brief in opposition to appellee's motion for summary judgment. Appellant acknowledged his status as an at-will employee; he argued, however, that appellee's reason for discharging him was "illegal:" appellant contended appellee fired him only because it suspected he was engaging in "concerted activity" which "is fully protected under federal law." Appellant cited 29 U.S.C. § 157. Appellant concluded his argument by urging the trial court to determine that Ohio's "public policy" embraced federal statutes.
Attached to appellant's brief in opposition were his own affidavit, a copy of the "All Feedup" letter, and a copy of the responsive letter the O'Donnells wrote to their employees. Appellant also contemporaneously filed the depositions he had taken of the O'Donnells.
In his affidavit, appellant stated 1) he was an at-will employee of appellee; 2) that he did not author the "Feedup" letter but "agreed with [its] contents"; and that 3) he was never given any reasons for his termination other than appellee's belief he had authored the "Feedup" letter.
Appellee thereafter filed a reply brief, pointing out that since appellant admitted he was not engaging in concerted activities, appellant did not fall within any statutory protection. Moreover, appellee argued that appellant's reliance on a federal statute would deprive the trial court of jurisdiction over the case.
Subsequently, the trial court issued an order granting appellee's motion for summary judgment. Appellant has filed a timely appeal from that order and presents the following two related assignments of error for this court's review:
A. Trial court erred in granting Appellee-Defendant's Motion for final summary Judgment because ohio recognizes a cause of action for violation of ohio public policy absent violation of a specific statue (SIC).
B. Trial court erred in granting appellee-defendant's motion for final summary judgment because appellant presented evidence as to each legal element of his claim.
Appellant argues a genuine issue of material fact existed concerning whether his discharge by appellee was illegal. He contends the evidence before the trial court was sufficient to demonstrate appellee's discharge of him contravened a "clear public policy" in spite of the absence of any specific Ohio statute on the matter. Appellant relies on the recent Ohio Supreme Court opinion Painter v. Graley (1994), 70 Ohio St.3d 377 to support his arguments. However, based upon the facts of this case, this court remains unpersuaded.
Civ.R. 56(c) makes summary judgment proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Norris v. Ohio Std. Oil Co. (1982),70 Ohio St. 2d 1. A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. Wing v. Anchor Media, Ltd. of Texas
(1991), 59 Ohio St.3d 108.
In its motion for summary judgment, appellee asserted appellant could not support a cause of action for wrongful discharge since the employment relationship between appellant and appellee was clearly one terminable at will and appellant could present no evidence that appellee violated any statutory duty.
As a general rule, unless otherwise agreed, either party to an employment-at-will agreement may terminate the employment relationship for any reason which is not contrary to law. Mers v. Dispatch PrintingCo. (1985), 19 Ohio St.3d 100.
The supreme court later added an exception to the general rule inGreeley v. Miami Maintenance Contractors, Inc. (1990), 49 Ohio St.3d 228. Therein, the court stated:
Henceforth, the right of employers to terminate employment at will for "any cause" no longer includes the discharge of an employee where thedischarge is in violation of a statute and thereby contravenes publicpolicy. (Fawcett v. G.C. Murphy Co. [1976], 46 Ohio St. 2d 245, 75 O.O. 2d 291, 348 N.E. 2d 144, modified.)
Id., at syllabus 2. (Emphasis added.)
This exception was recently expanded upon in Painter v. Graley, supra.
Therein, the court explained the exception as follows:
Pursuant to Greeley, a discharged employee has a private cause of action sounding in tort for wrongful discharge where his or her discharge is in contravention of a "sufficiently clear public policy." Id.,49 Ohio St. 3d at 233, 551 N.E.2d at 986 (citing Phung, supra). InGreeley, we recognized that public policy was "sufficiently clear" wherethe General Assembly had adopted a specific statute forbidding anemployer from discharging or disciplining an employee on the basis of aparticular circumstance or occurrence. We noted that other exceptions might be recognized where the public policy could be deemed to be "of equally serious import as the violation of a statute." Id.,49 Ohio St.3d at 235, 551 N.E.2d at 987.
Consistent with Greeley, we hold today that to state a claim of wrongful discharge in violation of public policy, a plaintiff must allege facts demonstrating that the employer's act of discharging him contravened a "clear public policy."
Subsequent to Greeley, the courts of appeals in this state have differed as to whether an employee has a cause of action for wrongful discharge in violation of public policy not stated in a statute. * * * "Clear public policy" sufficient to justify an exception to the employment-at-will doctrine is not limited to public policy expressed by the General Assembly in the form of statutory enactment. * * * Theexistence of such a public policy may be discerned by the Ohio judiciarybased on sources such as the Constitutions of Ohio and the UnitedStates, legislation, administrative rules and regulations, and the common law.
* * * [T]he courts of this state are capable of determining as a matter of law whether alleged grounds for a discharge, if true, violate a "clear public policy" justifying an exception to the common-law employment-at-will doctrine, thereby stating a claim. In making such determinations, courts should be mindful of our admonition in Greeley
that an exception to the traditional doctrine of employment-at-will should be recognized only where the public policy alleged to have beenviolated is of equally serious import as the violation of a statute.Id., 49 Ohio St.3d at 234, 551 N.E.2d at 987.
We note as well that a finding of a "sufficiently clear public policy"is only the first step in establishing a right to recover for the tort of wrongful discharge in violation of public policy. In cases where this required element of the tort is met, a plaintiff's right of recovery will depend upon proof of other required elements.
 Id., at 383-384. (Footnotes omitted, emphasis added.)
In this case, appellant based his claim that appellee's act in discharging him was against a "clear public policy" on a federal rather than a state statute, 29 U.S.C. § 157, which states:
§ 157. Rights of employees as to organization, collective bargaining, etc.
Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concertedactivities for the purpose of collective bargaining or other mutual aidor protection, and shall also have the right to refrain from any or allof such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a) (3) [29 USCS § 158(a) (3)].
(Emphasis added.)
The following section, 29 U.S.C. § 158, makes it an unfair labor practice for an employer to interfere with its employees when they are engaging in such activities. Thus, an employer's conduct is proscribed by statute, which has previously been the test in Ohio to establish a "clear public policy" sufficient to sustain a cause of action for wrongful discharge.[3] See, e.g., Greeley v. Miami Maintenance Contractors,Inc., supra; Alexander Radikovich v. The Higbee Co. (May 12, 1994), Cuyahoga App. No. 65374, unreported; cf., Phung v. Waste Mgt., Inc.
(1986), 23 Ohio St.3d 100; Tulloh v. Goodyear Atomic Co. (1992),62 Ohio St.3d 541.
However, even if this court determines that the alleged grounds for appellant's discharge justify an exception to the employment-at-will doctrine, this is only the beginning of the inquiry. In Painter v.Graley, supra, at footnote 8, the court described the other elements appellant must produce evidence on in order to establish a cause of action for wrongful discharge:
In reviewing future cases, Ohio courts may find useful the analysis of Villanova Law Professor H. Perritt, who, based on review of cases throughout the country, has described the elements of the tort as follows:
"1. That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).
"2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (thejeopardy element).
"3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
"4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element)." (Emphasissic.)
H. Perritt, The Future of Wrongful Dismissal Claims: Where does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398-399.
A review of these elements as applied to the facts of this case reveals appellant failed to sustain his burden to produce evidence sufficient to withstand appellee's motion for summary judgment. Wing v. Anchor Media,Ltd. of Texas, supra.
The deposition testimony and other evidence presented to the trial court, including appellant's own affidavit, clearly demonstrate the following: 1) since he denied writing the "Feedup" letter, denied that he was involved in an attempt to unionize his fellow employees, and failed to state he spoke to any of his fellow employees about matters of "mutual aid or protection," it is clear appellant was not engaged in any "concerted activities" protected by 29 U.S.C. § 157, thus, dismissing employees under circumstances like those involved in appellant's dismissal would not jeopardize the public policy; 2) during his tenure as appellee's employee, appellant had violated several company policies as outlined in the employee handbook by the time the "Feedup" letter appeared, thus, his dismissal was not sufficiently motivated by conduct related to the public policy; and 3) since the other employees did not "agree" with the "Feedup" letter's contents as appellant did, appellee's termination of appellant's employment was done in an effort to preserve the working environment it sought to foster in its business, therefore, appellee had an overriding legitimate business justification for appellant's dismissal.
Under these circumstances, appellant provided insufficient evidence to support the elements of a successful cause of action for wrongful discharge. Painter v. Graley, supra; Alexander Radikovich v. The HigbeeCo., supra. Therefore, the trial court did not err in granting appellee's motion for summary judgment. Wing v. Anchor Media, Ltd. of Texas, supra.
Accordingly, appellant's assignments of error are overruled.
The judgment of the trial court is affirmed.
[1] This letter is quoted verbatim.
[2] This letter is also quoted verbatim.
[3] Since the federal legislation merely aids this court in determining whether a sufficiently clear "public policy" exists and this court is thus not using it for the purpose of regulation, there is no jurisdictional "pre-emption" issue as appellee asserts in its appellate brief. Painter v. Graley, supra, at 384; cf., San Diego Building TradesCouncil v. Garmon (1959), 359 U.S. 236.