[Cite as *Caiazza v. Mercy Med. Ctr.*, 2014-Ohio-2290.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| MATTHEW P. CAIAZZA | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| MERCY MEDICAL CENTER, ET AL. | : | Case No. 2013CA00181 |
| | : | |
| Defendants-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Court of Common
                             Pleas, Case No. 2012CV03652

JUDGMENT:                    Affirmed/Reversed in Part &
                             Remanded

DATE OF JUDGMENT:            May 27, 2014

APPEARANCES:

For Plaintiff-Appellant                For Defendants-Appellees

SALLY D. HENNING                       KAREN SOEHNLEN MCQUEEN
7296 Ashburton Circle, NW              P.O. Box 36963
North Canton, OH  44720                Canton, OH  44735-6963

TODD M. CONNELL                        CRAIG PELINI
150 West Avenue, Suite 102             8040 Cleveland Avenue, NW
Tallmadge, OH  44278                   North Canton, OH  44720

                                       For SODEXO/Brian Colosimo

                                       OWEN RARRIC
                                       P.O. Box 36963
                                       Canton, OH  44735-6963

*Farmer, J.*

{¶1}   In 1999, appellant, Matthew Caiazza, began employment with appellee, Mercy Medical Center, Inc.  In 2010, appellant worked as an LPN on 9 Main.

{¶2}   In 2006, appellee, Jennifer Jones, began employment with appellee Mercy, working in the food services department.

{¶3}   Appellant and appellee Jones would frequently take "smoking breaks" together, outside, off the hospital's property.

{¶4}   On August 28, 2010, appellee Jones reported to her night supervisor, Terrance Bowman, that during one of the smoke breaks, appellant had inappropriately touched her breast outside of her clothing.  The police were called and an investigation ensued.

{¶5}   Appellant explained that during the smoke break, appellee Jones offered him the opportunity to touch her breast in exchange for the narcotic pain reliever, Vicodin.  He informed her that he could not give her any Vicodin, whereupon she invited appellant to touch her breast anyway and he did so.  A couple hours later, appellant spoke to appellee Jones and informed her that he loved his wife and they could not engage in a relationship.  Thereafter, appellee Jones reported the incident.

{¶6}   On August 30, 2010, appellant "forcibly" resigned his position at the request of Lorraine Washington, appellee Mercy's then Director of Human Resources.

{¶7}   Appellant was subsequently charged with gross sexual imposition.  His defense counsel subpoenaed appellee Mercy for employee and personnel records for both appellant and appellee Jones.  Appellant did not receive all of the requested

documents and as a result, pled no contest to a reduced charge of disorderly conduct in November 2010.

{¶8} On November 26, and December 3, 2012, appellant filed a complaint and an amended complaint, respectively, against appellees Mercy and Jones, and also several individuals associated with appellee Mercy in a supervisory position, to wit: Thomas Cecconi, Peter Christ, Jeffrey Smith, Allyson Kelly, Kathy Casler, Patti Bresnahan, and Lorraine Washington. Appellant also named SODEXO, Inc., the company that provided food services to appellee Mercy, and Brian Colosimo, an employee thereof and appellee Jones's supervisor. Appellant made claims of breach of contract, sexual harassment and aiding and abetting discrimination under R.C. Chapter 4112, spoliation, fraud, unlawful retaliation, civil conspiracy, and negligent retention/supervision.

{¶9} All defendants save for appellee Jones filed a motion to dismiss the complaint. By judgment entry filed February 14, 2013, the trial court granted the motion in part, dismissing appellant's claims for breach of contract and aiding and abetting discrimination, and dismissing the individual defendants on appellant's claims for sexual harassment, unlawful retaliation, and negligent retention/supervision.

{¶10} All parties moved for summary judgment on the remaining claims. Thereafter, appellant voluntarily dismissed defendants SODEXO and Colosimo on July 8, 2013. By judgment entry filed August 9, 2013, the trial court granted summary judgment in favor of appellees Mercy, its individual named employees, and Jones.

{¶11} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶12} "THE TRIAL COURT ERRED IN LAW BY DISMISSING APPELLANT'S CLAIMS FOR BREACH OF DUTY AND AIDING AND ABETTING, AND DISCRIMINATION, HARASSMENT AND RETAILIATION CLAIMS AGAINST INDIVIDUAL DEFENDANTS."

II

{¶13} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE REMAINING COUNTS."

I

{¶14} Appellant claims the trial court erred in granting the Civ.R. 12(B)(6) motion to dismiss on his claims for breach of contract and aiding and abetting discrimination, and dismissing the individual defendants on his claims for sexual harassment/discrimination and unlawful retaliation.  We agree in limited part regarding the claims for aiding and abetting discrimination and sexual discrimination.

{¶15} Our standard of review on a Civ.R. 12(B)(6) motion to dismiss is de novo. *Greeley v. Miami Valley Maintenance Contractors, Inc.,* 49 Ohio St.3d 228 (1990).  A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint.  *State ex rel. Hanson v. Guernsey County Board of Commissioners,* 65 Ohio St.3d 545, 1992-Ohio-73.  Under a de novo analysis, we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party*. Byrd. v. Faber,* 57 Ohio St.3d 56 (1991).

BREACH OF DUTY CLAIM

{¶16} In his amended complaint, appellant references "The Employee Information Booklet," a compilation of personnel policies, practices, and procedures for appellee Mercy, including a Code of Conduct and Ethical Behavior.  Appellant claimed appellee Mercy violated these policies and procedures by not fully complying with subpoenas issued by him in conjunction with his criminal case (¶ 74), failing to fully investigate his allegations against appellee Jones (¶ 75), and failing to properly handle the respective complaints of himself and appellee Jones (¶ 76).

{¶17} The facts as alleged in the amended complaint that we are required to accept as true under a Civ.R. 12(B)(6) standard are: (1) appellee Mercy's Employee Handbook and Code of Conduct and Ethical Behavior bound all the parties (¶ 15); (2) appellee Mercy knew of a prior incident in 2009 involving appellee Jones and another co-worker (Adam Harsh) because of appellee Jones's fiancé's actions during the incident (¶ 30); (3) no report was made to the police regarding the 2009 incident (¶ 37); (4) no investigation was conducted as to why appellee Jones delayed reporting the incident sub judice (¶ 38); (5) its employees accepted appellee Jones's allegations as true, and made no inquiry into appellant's allegations against appellee Jones (¶ 41-43, 58); (6) not all documents were disclosed when subpoenaed in conjunction with appellant's criminal trial, including documents regarding appellee Jones's veracity (¶ 60-63); (7) no one investigated if the touching of appellee Jones's breast was consensual (¶ 46); (8) without interviewing appellee Jones, Lorraine Washington decided to terminate appellant (¶ 54-56); and (9) appellee Jones was not disciplined for violating appellee Mercy's policies (¶ 59).

{¶18} It is appellant's position that the Employee Handbook and Code of Conduct and Ethical Behavior are sufficient to overcome Ohio's employment at-will doctrine.  In *Mers v. Dispatch Printing Co.,* 19 Ohio St.3d 100 (1985), paragraph one of the syllabus, the Supreme Court of Ohio held: "Unless otherwise agreed, either party to an oral employment-at-will employment agreement may terminate the employment relationship for any reason which is not contrary to law."  The *Mers* court also held the following at 105:

> We therefore hold that where appropriate, the doctrine of promissory estoppel is applicable and binding to oral employment-at-will agreements when a promise which the employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise.
>
> The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee.

{¶19} Ohio has not abandoned its public policy of employment at-will, as illustrated by the breadth of cases distinguishing *Mers*.  In *Bartlett v. Daniel Drake Memorial Hospital,* 75 Ohio App.3d 334, 338 (1st Dist.1991), our brethren from the First District set forth the exceptions commonly accepted:

It is undisputed that Gwen was classified as an employee at will where, unless otherwise agreed, either party may terminate the employment relationship for any reason not contrary to law. *Fawcett v. C.G. Murphy & Co.* (1976), 46 Ohio St.2d 245, 75 O.O.2d 291, 348 N.E.2d 144. In *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150, the Ohio Supreme Court established two narrow exceptions to an employer's ability to discharge employees freely under employment-at-will contracts. These two exceptions involve the doctrine of promissory estoppel and the creation of an implied contract. Undisturbed by the holding in *Mers* is the generally accepted conclusion that items such as employer handbooks, company policy or oral representations do not create employee rights which alter the "termination for any reason" terms for discharge under the at-will situation unless the parties have a "meeting of the minds" indicating that such items are to be considered valid contracts altering the terms for discharge. *Turner v. SPS Technologies, Inc.* (June 4, 1987), Cuyahoga App. No. 51945, unreported, 1987 WL 11967. While personnel manuals may be important in establishing the terms and conditions of employment, absent the necessary mutual assent or meeting of the minds by the employer and employee to establish employment-termination rights, handbooks or other supplementary manuals or materials merely constitute unilateral statements of company rules and regulations. *Turner v. SPS*

*Technologies Inc., supra; Isgro v. Deaconness Hosp.* (Oct. 30, 1980), Cuyahoga App. No. 41966, unreported.

In the case *sub judice,* we conclude that no contractual intent existed between the parties to modify the original at-will contract of employment. Appellants' reliance on Drake Hospital's "Employee Discipline" and "Predisciplinary Conference and Appeal Procedure" materials is misplaced. These policies are but mere unilateral statements of the hospital's procedure for the invocation of disciplinary action against an employee, and do not create an implied employment agreement between the parties. Therefore, appellants did not possess a cause of action against the appellees for breach of contract predicated upon the provisions of Drake Hospital's personnel manual. Consequently, there was no breach of contract or constructive discharge as alleged by appellants, and the trial court properly granted summary judgment to appellees on this claim.

{¶20} Therefore, as to the claims of inadequate investigation and bias one-sidedness that are accepted as true, the Employee Handbook and Code of Conduct and Ethical Behavior did not modify the employment-at-will agreement and guarantee employment. As in *Bartlett,* mere assertions that a more thorough investigation was warranted are not sufficient to quash Ohio's employment at-will doctrine.

{¶21} As for appellant's argument regarding a breach of duty to respond appropriately and completely to a duly issued subpoena, we find such claim not to be supported by any legal extension of Ohio's employment at-will doctrine.

{¶22}  The trial court did not err in dismissing the breach of duty claim.

AIDING AND ABETTING DISCRIMINATION CLAIM

{¶23}  In his complaint at ¶ 87-88, appellant claimed the defendants, individually and collectively, violated R.C. 4112.02, unlawful discriminatory practices, specifically, subsection (J) in light of subsection (A) which state the following:

It shall be an unlawful discriminatory practice:

(A) For any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

(J) For any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with this chapter or any order issued under it, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice.

{¶24} Appellant claimed he was constructively discharged, while appellee Jones "was not issued a notice that she had violated any policy" (¶ 57, 59). Appellant claimed he was discriminated against for being a male, as appellee Mercy and its employees failed to fully investigate the allegations in violation of hospital policy and "undertaken on behalf of women who made complaints" (¶ 64). In addition, appellee Mercy was aware of the 2009 incident and knew or should have known that appellee Jones "acted in an unreliable manner" (¶ 30, 49).

{¶25} The individual named defendants associated with appellee Mercy included Thomas Cecconi (President and Chief Executive Officer), Peter Christ (Director of Security), Jeffrey Smith (Chief Operations Officer, Vice-President, and Chief Compliance Officer), Allyson Kelly (Administrative Director), Kathy Casler (Clinical Manager), Patti Bresnahan (Human Resources Manager or Interim Director/Director of Human Resources), and Lorraine Washington (Director of Human Resources, January 1, 2009 to January 1, 2011).

{¶26} In *Genaro v. Central Transport, Inc.,* 84 Ohio St.3d 293, 300 (1999), the Supreme Court of Ohio held the following:

Based on the foregoing, we believe that the clear and unambiguous language of R.C. 4112.01(A)(1) and (A)(2), as well as the salutary antidiscrimination purposes of R.C. Chapter 4112, and this court's pronouncements in cases involving workplace discrimination, all evidence that individual supervisors and managers are accountable for their own discriminatory conduct occurring in the workplace environment.

Accordingly, we answer the certified question in the affirmative and hold that for purposes of R.C. Chapter 4112, a supervisor/manager may be held jointly and/or severally liable with her/his employer for discriminatory conduct of the supervisor/manager in violation of R.C. Chapter 4112.

{¶27} From our review of the amended complaint and facts alleged in ¶ 15-64, there are no allegations of any participation in the decision to terminate appellant by Mr. Cecconi, Mr. Smith, and Ms. Bresnahan. Therefore, the amended complaint fails to state a claim for aiding and abetting discrimination against these defendants.

{¶28} Apart from the presence of Mr. Christ, Ms. Kelly, and Ms. Casler at meetings (¶ 54, 56), there are no allegations of them making the actual decision to terminate appellant save for their agreement with Ms. Washington's decision to so terminate (¶ 56) or of them being involved totally in the overall investigation. Therefore, the amended complaint fails to state a claim for aiding and abetting discrimination against these defendants.

{¶29} The amended complaint claims the decision to terminate appellant was made by Ms. Washington, the Director of Human Resources at the time for appellee Mercy (¶ 56). Therefore, we conclude it was error to dismiss the claim against Ms. Washington and appellee Mercy under the Civ.R. 12(B)(6) standard.

{¶30} The trial court erred in dismissing the aiding and abetting discrimination claim against Ms. Washington and appellee Mercy.

SEXUAL HARASSMENT/DISCRIMINATION AND

UNLAWFUL RETALIATION CLAIMS

{¶31} Appellant argues the trial court erred in dismissing the individual named defendants.

{¶32} R.C. 4112.02(I) states it shall be an unlawful discriminatory practice:

For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.

{¶33} R.C. 4112.01(A)(2) states the term "employer" as used in R.C. Chapter 4112 "includes the state, any political subdivision of the state, any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer."

{¶34} Appellant argues the individual named defendants were acting on behalf of and in the interest of appellee Mercy and therefore, they meet the definition of "employer" under R.C. 4112.01(A)(2).

{¶35} Based upon the facts in the amended complaint, the only "employer" who made the decision to terminate appellant was Ms. Washington, Director of Human Resources at the time.  Although it was alleged that Mr. Christ, Ms. Kelly, and Ms.

Casler were aware of appellee Jones's complaint and were involved in meetings, the decision to terminate appellant as averred in the amended complaint was Ms. Washington's alone.

{¶36} The unlawful retaliation claim centered on appellee Mercy's refusal to provide him with a reference.  The only allegation of retaliation was against appellee Mercy.

{¶37} The trial court did not err in dismissing the sexual harassment/discrimination claim against the individual named defendants with the exception of Ms. Washington.  The trial court did not err in dismissing the unlawful retaliation claim against the individual named defendants.

{¶38} Assignment of Error I is granted in part and denied in part.  Claims of aiding and abetting discrimination against appellee Mercy and Ms. Washington are reinstated, along with the claim of sexual discrimination against Ms. Washington.

II

{¶39} Appellant claims the trial court erred in granting summary judgment to appellees Mercy, its individual named employees, and Jones on the remaining claims: aiding and abetting (Jones), sexual harassment (Jones/Mercy), spoliation (all), fraud (all), unlawful retaliation (Jones/Mercy), civil conspiracy (all), and negligent retention/supervision (Jones/Mercy).[1]

{¶40} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56.  Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448, 1996-Ohio-211:

---

[1]As stated in the facts above, appellee Jones did not participate in the motion to dismiss.

Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274.

{¶41} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35 (1987).

SEXUAL HARASSMENT/DISCRIMINATION CLAIM

{¶42} Appellant argues there existed genuine issues of material fact regarding his claim for sexual harassment/discrimination. In his amended complaint, appellant alleged a direct violation of an unlawful discriminatory practice under R.C. 4112.01(A), cited above. Appellant claimed disparate treatment because of his gender (¶ 80), the reasons for his termination were pretextual and a sham (¶ 81), and the lack of

cooperation in complying with his subpoena vis-á-vis compliance with subpoena requests "on behalf of current or former female employees" (¶ 82-83).

{¶43} Appellant claimed he was discriminated against because he is a male and was involved in sexual contact and terminated from employment, while appellee Jones, a female, was involved in the same sexual contact, but was not terminated.

{¶44} There appears to be two R.C. 4112.02 claims: (1) sexual harassment in the creation of a hostile work environment, and (2) sexual discrimination.

{¶45} As stated by this court in *Jackson v. Saturn of Chapel Hill, Inc.,* 5th Dist. Stark No. 2005 CA 00067, 2005-Ohio-5302, ¶ 17, in order to maintain a claim for sexual harassment, a plaintiff must demonstrate:

(1) that the employee was a member of a protected class, (2) that the employee was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors, (3) that the harassment complained of was based on gender, and (4) that the employee's submission to the unwelcome advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment. (Citations omitted.)

{¶46} Appellant admitted to freely touching appellee Jones's breast, and appellee Mercy acknowledged the sexual contact was consensual. A non-supervisory employee such as appellee Jones lacked any ability to control appellant's employment.

The sexual harassment claim clearly fails.  We find no genuine issue of material fact to exist on a quid pro quo harassment claim against appellee Jones or other employees/supervisors.

{¶47}  As stated by this court in *Thompson v. Dover Elks,* 5th Dist. Tuscarawas No. 2002 AP 02 0016, 2002-Ohio-5610, ¶ 16, in order to establish a discrimination claim under R.C. 4112.02(A), a plaintiff must prove:

> ***(1) that he was a member in a protected class; (2) that he was discharged from his job by the employer; (3) that he was qualified for the position; and (4) that he was replaced by a person who did not belong to the protected class. *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668.  However, in cases involving reverse gender discrimination, courts have modified the *McDonnell* standard to enable plaintiffs who are members of a dominant group to prove a prima facie case of discrimination.  To show reverse discrimination and to avoid a summary judgment, the plaintiff must establish a prima facie case by showing: (1) background circumstances supporting the suspicion that the defendant is the unusual employer who discriminates against the majority; and (2) that the employer treated employees who were similarly situated, but not members of the protected group, more favorably.  *Murray v. Thistledown Racing Club, Inc.* (C.A.6, 1985), 770 F.2d 63, 67.

{¶48} Appellee Mercy argues appellant has not established that any female employee who engaged in sexual contact with another employee was not terminated, thereby failing to establish the second prong above. To establish "similarly situated," a plaintiff must show "that the comparable employee is similar 'in all of the relevant aspects.' " *Barry v. Noble Metal Processing, Inc.,* 276 Fed.Appx. 477, 480 (6th Cir.2008), citing *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir.1998). As explained by appellee Mercy in its brief at 18:

In *Barry,* the court went on to state, "[w]hile the precise aspects of employment that are relevant to determining whether the similarly situated requirement has been satisfied depend on the facts and circumstances of each case, this court has generally focused on whether the plaintiff and the comparable employee: (1) share the same supervisor; (2) are subject to the same standards; and (3) have engaged in the same conduct 'without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.' " *Id.* at 480-481, quoting *Ercegovich* at 352 (internal quote marks omitted).

{¶49} In her deposition at 68-69, 75, and 76-77, respectively, Ms. Washington explained her decision to terminate appellant:

Q. What else do you remember was said at the time?

A. ***I remember Pete saying that the police were called, that Matt initially denied that he had done this to the police, and that he did eventually admit that he did it, that he did touch her breasts. And at that point I virtually called a halt to the meeting and said, We're done here.

***

Q. And that he later said to the police that he did touch her, her breasts, correct?

A. Yes.

Q. And that Matt further said he was invited to do so, correct?

A. Yes.

Q. And Matt also told - - Christ also told you that Matt had said she had been seeking Vicoden (sic), did he not?

A. I do remember that, yes.

***

Q. Okay. So you're having this conversation. Did you ask if Matt had been asked to give a written statement?

A. No. After - - after Pete told me that he admitted to touching her breasts, albeit by invitation, I did not - - my statement was, Well, we're done here. The employee has admitted that what they did - - what they did, that's inappropriate in our environment. We're done.

***

Q. Okay. And you also - - I've been told by other eyewitness that consensual sexual activity that's off campus is not forbidden by the hospital; is that correct?

\*\*\*

A. Consensual sexual activity.

Q. Between employees is not forbidden by the hospital.

A. We would not be in a position to forbid that unless it impacts the hospital in some type of way. If it happens that it be - - I think when employees bring their personal problems into the workplace then whether it's on campus or off campus that makes - - they make it part of the hospital's problem by bringing it to the hospital administration.

{¶50} Ms. Washington admitted that both appellant and appellee Jones had drawn the hospital into their sexual contact encounter (depo. at 79), no action was taken against the female employee, appellee Jones (depo. at 80), and a subsequent investigation was not done (depo. at 81-82). Ms. Washington also admitted appellant's termination occurred with the knowledge that appellant had admitted to consensual touching (depo. at 87-89). She characterized the reason for the termination to appellant's lack of good judgment (depo. at 92-94) and "bringing it into the workplace" (depo. at 94-95). "Bringing it into the workplace" appears to equate to lodging a complaint and "they have made their relationship my problem" (depo. at 94-95).

{¶51} Also admitted in Ms. Washington's deposition are two facts that have peripheral bearing on this issue. First, appellant had clocked out for the smoke break

and appellee Jones had not; and secondly, the activity occurred off the property of appellee Mercy (depo. at 75-76, 105-106).

{¶52} Appellant argues his discrimination claim should survive because he proved disparate treatment of a similarly situated employee. The similarly situated employee is Julie Ann Findley, a housekeeping employee who as of result of a traffic stop, was arrested on drug related charges and was subsequently found guilty of disorderly conduct. *See,* Appellant's June 25, 2013 Motion for Summary Judgment at pages 28-30. Appellee Mercy was notified of the drug arrest by the Perry Police Department because the drugs involved "marijuana, percocet, and nyproxin, without a legal prescription" *Id.* at 28-29. Like appellant, Ms. Findley was charged with a criminal offense, and appellee Mercy was concerned because of her access to drugs. So in Ms. Washington's words, Ms. Findley's actions "brought it into the workplace." Ms. Findley's criminal case, as appellant's, was resolved with a disorderly conduct plea, a non-status criminal offense. Ms. Findley was never disciplined or terminated at the beginning or end of her criminal case. In fact, a February 17, 2010 email sent by Mr. Christ to Ms. Bresnahan, cited in appellant's motion at 29, indicated a disorderly conduct charge was not a reason for termination:

> I was updating files we keep on reports we prepare. For info, she
> was charged on 7/16/2009. One count drug paraphernalia offense was
> reduced to disorderly conduct and was found guilty. One count
> possession of drugs and that charge was dismissed. One count of driving
> on suspended operator license and that was dismissed.* * * We do not

have employees that have been convicted of disorderly conduct. I checked Kronos and she still works for us. We need to make note in her file that Security has case number 09-0359 in which she was arrested on drug charges in the event we have another problem with her.

{¶53} Under de novo review, we find a genuine issue of material fact to exist on the issue of discrimination under R.C. 4112.02(A), and the trial court erred in granting summary judgment to appellee Mercy and dismissing the claim against Ms. Washington as discussed above. However, there are no genuine issues of material fact on this issue regarding appellee Jones and any other hospital employees, or on the issue of aiding and abetting against appellee Jones.

{¶54} Given appellee Mercy's concession that the sexual contact during appellant's smoke break off property was consensual, there is a clear disparity of treatment between appellant and appellee Jones. One can argue that the facts on their own establish disparate treatment.

{¶55} The trial court erred in granting summary judgment to appellee Mercy and dismissing the claim against Ms. Washington on the discrimination claim.

SPOLIATION CLAIM

{¶56} The tort of spoliation was first recognized by the Supreme Court of Ohio in *Smith v. Howard Johnson Company, Inc.,* 67 Ohio St.3d 28, 29, 1993-Ohio-229:

(1) A cause of action exists in tort for interference with or destruction of evidence; (2a) the elements of a claim for interference with

or destruction of evidence are (1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts; (2b) such a claim should be recognized between the parties to the primary action and against third parties; and (3) such a claim may be brought at the same time as the primary action.

{¶57} In *Allstate Insurance v. QED Consultants, Inc.,* 5th Dist. Knox No. 09CA14, 2009-Ohio-4896, ¶ 19, this court stated, "[t]he Ohio Supreme Court has not extended its holding in *Smith v. Howard Johnson,* supra, to cases where the spoliation claim asserted does not involve the willful destruction or alteration of physical evidence." (Citations omitted.)

{¶58} Appellant argues the spoliation occurred in relation to his criminal case.

{¶59} Appellant argues appellee Mercy, incorrectly, intentionally or not, responded to the criminal subpoena for "personnel and employment records." It is undisputed that appellee Mercy did not send several documents concerning the 2009 incident involving appellee Jones and another coworker (Adam Harsh): MMC 00047, MMC 00048, MMC 000212, MMC 000619, MMC 000227, MMC 000229, MMC 000231, MMC 000232, MMC 000233, MMC 000239, MMC 000269, and MMC 000275 (Admission Nos. 9, 10, 16-22). *See,* Appellant's June 25, 2013 Motion for Summary Judgment at page 32.

{¶60} The gravamen of appellant's claim is not that the documents were destroyed (the very argument itself specifies names and the contents of the documents), but that appellee Mercy did not properly respond to the criminal subpoenas. Appellant pled no contest to disorderly conduct, and does not cite to any damages as a result of the negligence to answer the subpoenas. As indicated by the Supreme Court of Ohio, any spoliation claim must be brought in the original case i.e., the criminal case.

{¶61} Appellant also claims there are "obfuscated" documents that he was unable to obtain: an email from Mr. Colosimo to Ms. Washington that she refers to in a December 13, 2010 email to Mr. Colosimo, and a drafted reference letter by Ms. Casler that was faxed to appellant on August 31, 2010. *See,* Appellant's June 25, 2013 Motion for Summary Judgment at pages 41-42.

{¶62} Ms. Casler now cannot recall the letter. Casler depo. at 22, 31. In his motion for summary judgment on page 43, appellant argued the items were not destroyed, but were found save the credibility issue raised by Ms. Casler's denial of the reference letter:

> Had all of the documentation referenced in this section on spoliation been tendered instead of Defendants' repeated defiance and interference, Plaintiff would not have had to resort to extraordinary measures in the instant case or other means to secure such evidence in this case. It would not have been necessary for Plaintiff to incur the expense of taking Adam Harsh's deposition. Additionally, the mere fact

that Plaintiff had to expend any time in any part of any deposition to explore details of how any of the Defendants, both individual and corporate, maintained, culled, retained, and assembled documents, meant that Plaintiff incurred added expense that he otherwise should not have had to incur had these Defendants complied with their respective obligations under the subpoenas and/or discovery requests.

{¶63} The trial court did not err in granting summary judgment to appellees on the spoliation claim.

FRAUD CLAIM

{¶64} In *Burr v. Stark County Board of Commissioners,* 23 Ohio St.3d 69 (1986), paragraph two of the syllabus, the Supreme Court of Ohio found the elements of fraud to be as follows:

(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

{¶65} The fraud claim centers on the responsiveness or non-responsiveness of appellee Mercy and Ms. Washington to the criminal subpoenas. In his amended complaint, appellant alleged the following:

126. When responding to the subpoena, MMC made a representation of compliance with the subpoena. MMC's representation was false, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it was true or false that MMC's knowledge may be inferred.

128. Washington and MMC violated the duty to comply with the Subpoena under Ohio Law as well as under MMC Compliance Policy.

129. Defendant Washington and MMC knew or should have known that responsive documents were located in the Personnel department, and failed to secure and produce them.

130. Defendant Washington and MMC knew or should have known that responsive documents were located elsewhere at MMC, or in the custody of SODEXO, and failed to secure and produce them in response to the Subpoena.

131. By failing to inform the parties in the criminal action that documents were being withheld or destroyed, MMC concealed factual information when MMC had a duty to speak.

{¶66} Appellant argues appellee Mercy had a duty to disclose that the responses to the subpoenas were deficient or qualified. As a result, the subpoenas could have been reissued. Appellant's claimed harm is that he would have gone to trial but instead, chose a good plea deal.

{¶67} Appellant further alleges that Ms. Washington and Ms. Bresnahan, Human Resources Manager or Interim Director/Director of Human Resources, only turned over the "official file." We fail to see how conforming to the language of the subpoenas was in any way fraudulent.

{¶68} Appellant argues in response to a video request, investigation documents were incomplete because no investigation reports, witness statements, security logs or "any other" such documentation was provided. The investigation report was done by the Canton Police Department and as the report indicates, "that material" was evaluated by the Canton Police Prosecutor.

{¶69} Appellant challenges the trial court's determination of "intent to defraud" by citing the fact that the subpoenas were responded to according to the normal operational procedures as testified to by Amy Heuer. The center of appellant's claim is that appellee Mercy failed to disclose the 2009 incident involving appellee Jones and Mr. Harsh. However, appellant knew about the previous sexual harassment complaint made by appellee Jones.

{¶70} Not only did there not exist genuine issues of material fact on intent, but by appellant's own admission, he knew of the previous 2009 incident and therefore, there was no justifiable reliance.

{¶71} The subpoenas were only directed to appellee Mercy therefore, any fraud claimed against any other named defendants was not warranted.

{¶72} The trial court did not err in granting summary judgment to appellees on the fraud claim.

UNLAWFUL RETALIATION CLAIM

{¶73} As explained by our brethren from the Tenth District in *Peterson v. Buckeye Steel Casings,* 133 Ohio App.3d 715, 727 (10th Dist.1999):

> To prove a claim of retaliation, a plaintiff must establish three elements: (1) that she engaged in protected activity, (2) that she was subjected to an adverse employment action, and (3) that a causal link exists between a protected activity and the adverse action. Once a plaintiff successfully establishes a prima facie case, it is the defendant's burden to articulate a legitimate reason for its action. If the defendant meets its burden, the burden shifts back to the plaintiff to show that the articulated reason was a pretext.

{¶74} Appellant argues as a result of his discrimination claims under R.C. Chapter 4112, appellee Mercy refused to give him a reference. Appellant was officially terminated via his "forced" resignation on August 30, 2010. No action pursuant to R.C. 4112.02 was commenced prior to this date.

{¶75} Appellant argues because appellee Mercy knew the complaint was about sexual contact, it could immediately determine appellant was engaged in a "protected

activity."  However, a claim for sexual discrimination was not made until well after his termination date of August 30, 2010 (appellant submitted a draft of a sexual discrimination complaint to appellee Mercy on March 28, 2011).  The issue regarding the reference letter had long passed as a draft of the letter was faxed to appellant on August 31, 2010 and a final reference was never given way in advance of March 28, 2011.

{¶76} In his motion for summary judgment, appellant argued appellee Jones retaliated against him for turning down her sexual favors.  There was no evidence that appellee Jones had the ability to fire or discipline appellant.  Therefore, the trial court properly granted appellee Jones summary judgment on this claim.

{¶77}  A remaining argument is whether appellant's termination was the result of a belief that a sexual discrimination claim was going to be filed.  As discussed above, Ms. Washington stated appellant was terminated for lack of good judgment and bringing the consensual sexual contact incident into the workplace.

{¶78}  The trial court did not err in granting summary judgment to appellee Mercy on the unlawful retaliation claim.

CIVIL CONSPIRACY CLAIM

{¶79} In his amended complaint, appellant claimed appellee Mercy and SODEXO by their unlawful acts conspired maliciously, resulting in injury to appellant (¶ 144).

{¶80}  A claim for civil conspiracy requires proof of "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages."  *LeFort v. Century 21-Maitland Realty*

*Company,* 32 Ohio St.3d 121, 126 (1987), citing *Minarik v. Nagy,* 8 Ohio App.2d 194, 196 (1963).

{¶81} On July 8, 2013, appellant voluntarily dismissed SODEXO as a party. Therefore, there can be no claim for conspiracy or "conspiring together" when only one defendant remains.

{¶82} The trial court did not err in granting summary judgment to appellees on the civil conspiracy claim.

### NEGLIGENT RETENTION/SUPERVISION CLAIM

{¶83} The amended complaint claims appellee Mercy negligently retained appellee Jones and failed to prudently investigate, discipline or discharge her (¶ 147-150). No allegations were made against appellee Jones.

{¶84} The elements of a negligent retention/supervision claim are: "(1) the existence of an employment relationship; (2) the fellow employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission which caused the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as a proximate cause of the injury." *Zieber v. Heffelfinger,* 5th Dist. Richland No. 08CA0042, 2009-Ohio-1227, ¶ 31; *Browning v. Ohio State Highway Patrol,* 151 Ohio App.3d 798, 2003-Ohio-1108 (10th Dist.).

{¶85} The trial court's decision to grant summary judgment to appellee Mercy on this claim centered around a finding of no proximate cause to appellant's injuries. The gravamen of appellant's claim is that appellee Mercy took no action in disciplining appellee Jones, accepted her allegations, and through gender stereotype, chose only to

terminate him. Further, appellee Mercy knew or should have known appellee Jones's propensity for falsification based upon her previous 2009 incident and various anecdotal reports as to appellee Jones's attitude.

{¶86} In truth, Ms. Washington determined because appellant exhibited poor judgment and the consensual sexual contact incident had been brought into workplace, appellant should be terminated. It is also clear that appellee Mercy and Ms. Washington have taken the position that appellant's version is the truth.

{¶87} What factors leading to appellee Mercy's failure to terminate appellee Jones is unclear. However, a December 13, 2010 email between Ms. Washington and Mr. Colosimo leads to the conclusion that because appellee Jones did not clock out for her smoke break, she would be disciplined.

{¶88} We find the facts argued in support of this claim are in fact viable in appellant's R.C. 4112.02(A) discrimination claim. The crux of the lawsuit is appellant's termination leading to a violation of R.C. 4112.02(A) and not that appellee Jones was negligently supervised or retained.

{¶89} Appellant argues appellee Mercy should have had 20/20 hindsight. However, the pivotal point was that appellee Jones had initiated a criminal complaint, not that she still had a job.

{¶90} We conclude that although there can be more than one proximate cause of appellant's injury, the supervision and retention of appellee Jones after the fact is not one of them.

{¶91} The trial court did not err in granting summary judgment to appellees Mercy and Jones on the negligent retention/supervision claim.

{¶92}  Lastly, because appellee Jones was not involved in the motion to dismiss, the trial court granted summary judgment to appellee Jones on the breach of contract claim.  There does not appear to be any allegations against appellee Jones on this claim.  We find the trial court did not err in granting summary judgment to appellee Jones on the breach of contract claim.

{¶93}  Assignment of Error II is granted in part and denied in part.  The trial court erred in granting summary judgment to appellee Mercy on appellant's claim for sexual discrimination.

{¶94}  The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed in part and reversed in part.

By Farmer, J.

Gwin, P.J. and

Delaney, J. concur.


SGF/sg 325